IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALICIA TAKACS, | : | |
| | : | |
| | : | |
| v. | : | CIVIL NO. CCB-06-2343 |
| | : | |
| MICHELE FIORE, ET AL. | : | |
| | : | |

...o0o...

## MEMORANDUM

Alicia Takacs is suing Michele and Rosina Fiore[1] ("the Fiores"), Fiore Winery, Inc. ("the Winery"), and getintegrated, Inc. ("Getintegrated") due to the sexual harassment she allegedly experienced while working at the Winery.[2] Michele Fiore, an owner of the Winery and the alleged harasser, has moved to dismiss the intentional infliction of emotional distress ("IIED") claim against him, and the Winery has moved for dismissal of or summary judgment on the Title VII claim against it. Getintegrated, which describes itself as a "professional employer organization" ("PEO") that handles the Winery's human resources responsibilities, has also moved for dismissal of or summary judgment on the Title VII claim against it. The motions have been fully briefed, and pursuant to Local Rule 105.6, no hearing is necessary. For the reasons set forth below, the IIED claim against Mr. Fiore will be dismissed; summary judgment for Getintegrated will be granted; and a decision about the Title VII claim against the Winery

---

[1] It appears that Ms. Fiore has been dismissed from the case because the only count in which she was individually named (count II under the Maryland Declaration of Rights) has been voluntarily dismissed. (Docket entry no. 27, November 20, 2006.)

[2] The parties refer to the case as *Takacs v. Getintegrated*, *et al.*, however, it is listed in the court's records as *Takacs v. Fiore*, *et al.*

1

will be reserved pending clarification of Ms. Takacs's position.

## BACKGROUND

The plaintiff makes several tort claims (battery, intentional infliction of emotional distress, and false imprisonment) and a Title VII sexual harassment claim (hostile work environment resulting in a tangible employment action) based on incidents that occurred between the week of December 16, 2004 and May 22, 2005 when she worked as a salesroom manager at the Winery.[3]  The Winery is owned by Michele and Rosina Fiore, husband and wife, who also work there and supervise employees, including Ms. Takacs.  Ms. Takacs alleges that Mr. Fiore sexually assaulted her on six separate occasions, despite her insistence each time that he stop.  Specifically, she accuses Mr. Fiore of: (1) "grabbing her breasts and asking if they were real"; (2) "pushing her against a doorway in the office and forcing a kiss, and grabbing her crotch area and breasts"; (3) "grabbing her breasts"; (4) "putting his hand down her pants, forcing a kiss and touching her breasts"; (5) "grabbing her buttocks", and (6) "grabbing her buttocks [and] . . . stat[ing] words to the effect of '[t]hey are perfect'".  (1st Am. Compl.[4] ¶¶ 6-11.)  After each incident, Ms. Takacs informed Mr. Fiore that the conduct was unwelcome and advised him to stop.  (*Id.* at ¶ 25.)  Mr. Fiore is the only defendant for the three tort claims; the Winery is one of two defendants for the Title VII claim.

The other defendant named in the Title VII counts is Getintegrated, a "full-service

---

[3] As noted, an additional claim against the Fiores, the Winery, and Getintegrated under Article 46 of the Maryland Declaration of Rights was voluntarily dismissed by the plaintiff before it was answered.  (Docket entry no. 27, November 20, 2006.)

[4] All subsequent citations to the complaint will refer to the First Amended Complaint, unless otherwise indicated.

outsourcing provider of custom human resource management solutions, commonly referred to as a professional employer organization or PEO." (Mem. Supp. Def. Getintegrated, Inc.'s Mot. Dismiss Pl.'s 1st Am. Compl. or Alternatively Summ. J. [hereinafter "Getintegrated Mot."] at 2.) Getintegrated[5] provided various services for the Winery, including payroll administration and maintenance of personnel files. The existence of additional services or activities bearing on the precise legal relationship between Getintegrated and the Winery for Title VII purposes, which is disputed, will be addressed in the analysis below.

There do not appear to be any procedural or jurisdictional difficulties. Ms. Takacs received a right to sue letter from the EEOC (Equal Employment Opportunity Commission) and filed suit in state court within the 90-day deadline. The defendants removed the case to this court, which has jurisdiction over all counts under 28 U.S.C. §§ 1331, 1367.

Mr. Fiore has filed an answer with respect to the battery and false imprisonment counts; he and the Winery have filed a motion to dismiss or for summary judgment for the IIED count and the Title VII claim. Getintegrated has filed a motion to dismiss or for summary judgment for the Title VII claim against it.

## ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of

---

[5] Getintegrated acquired the Winery as a client when it purchased Prolease d/b/a Intraforce in January, 2005. As Getintegrated provides the same services to the Winery as Intraforce did, and it is not contested that Getintegrated assumed liability for its predecessor's actions, reference will be only to Getintegrated for the sake of clarity. (Getintegrated Mot. at 2, n.5.) It seems as if Intraforce may also have been known as HRPro, but it does not appear necessary to define each step in this evolution as Getintegrated does not contest liability based on its corporate structure or history.

3

a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244. To survive a motion to dismiss, however, a complaint must "in light of the nature of the action . . . sufficiently allege each element of the cause of action so as to inform the opposing party of the claim and its general basis." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005). In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See*, *e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions).

**Intentional Infliction of Emotional Distress Claim**

Mr. Fiore argues that the claim for intentional infliction of emotional distress ("IIED") should be dismissed because Ms. Takacs has failed to state a claim for which relief could be granted. Four elements must be sufficiently pled to state a claim for relief under IIED: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614, 281 Md. 560, 566,

4

(Ct. App. 1977) (internal references omitted).  All elements "must be satisfied completely before a cause of action will lie," and responsibility for the initial determination of whether the elements have been satisfied belongs to the trial judge.  *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1063, 66 Md. App. 46, 58 (Ct. Spec. App. 1986) (citing *Harris*, 380 A.2d at 611).  IIED claims are "rarely viable in a case brought under Maryland law."  *Robinson v. Cutchin*, 140 F. Supp. 2d 488, 494 (D. Md. 2001) (internal references omitted).

The court assumes, without deciding, that Ms. Takacs can satisfy the first three elements. *See*, *e.g.*, *Bryant v. Better Bus. Bureau of Greater Maryland*, 923 F. Supp. 720, 748 (D. Md. 1996) (finding second element satisfied because "repeated efforts by the Plaintiff's superior at work to reach for and fondle the Plaintiff's breasts and crotch are certainly 'beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a "civilized community."'") (internal citations omitted).  However, as Ms. Takacs fails to satisfy the fourth element, she fails to state a claim for IIED.

Severe distress is that which "'no reasonable man could be expected to endure.'"  *Harris*, 380 A.2d at 616 (internal citations omitted); *see also Rich v. United States*, 158 F. Supp. 2d 619, 630 (D. Md 2001).  This threshold is reached when a plaintiff's "emotional distress is so severe as to have disrupted her ability to function on a daily basis."  *Bryant*, 923 F. Supp. at 750.  While Ms. Takacs alleges debilitating conditions, including "severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach," (Compl. ¶ 36), she does not allege that she has been unable to function on a daily basis, even if her functioning is presumably affected by her psychological and physical distress.  Ms. Takacs also represents that she was able to work after leaving the Winery, further indicating that her daily functioning was adequate.  (*See* Compl. ¶¶

5

12, 30) (describing her application for unemployment benefits, which are sought by those who are able to work but unable to find employment). Ms. Takacs's claim to have "suffered a severely disabling emotional response" (*id.* at ¶ 36) is a legal conclusion which is not warranted by the other facts pled and does not prevent dismissal of her claim.[6] *See Young*, 238 F.3d at 577. Therefore, her IIED claim will be dismissed.

## Title VII Claim Against the Winery

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "When [a] workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).

The Winery seeks dismissal of or summary judgment on the Title VII claim against it on the grounds that it is not a covered employer because it has fewer than fifteen employees. 42 U.S.C. § 2000e(b). As materials outside of the pleadings are being considered, the request will be treated as one for summary judgment. Fed R. Civ. P. 12(b)(6). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

---

[6] The actions perpetrated against her, even if assumed to be extreme and outrageous, do not rise to the level necessary to make a persuasive argument for the existence of severe distress as a matter of law. *See Bryant*, 923 F. Supp. at 750 (concluding that conduct similar to Mr. Fiore's alleged actions did not "warrant a finding of severity as a matter of law").

as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Workers do not count as employees for the purposes of satisfying Title VII's numerosity requirement unless they are employed for "each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). *See also Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245 (2006) (holding that "the threshold number of employees for

application of Title VII is an element of a plaintiff's claim for relief, but not a jurisdictional requirement").[7]  Ms. Takacs's position on the number of workers meeting this definition is unclear.  In an affidavit attached to her opposition to the Winery's initial motion to dismiss, Ms. Takacs swears that the Winery had at least twenty-nine employees during her employment there (November 13, 2004 - May 22, 2005), some of whom were paid in cash and not on the payroll. (Aff. Alicia Francine Takacs, Oct. 18, 2006, attached to Pl.'s Mem. Supp. [sic] Defs.' [sic] Michele Fiore, Rosina Fiore and Fiore Winery, Inc.'s Mot. Dismiss or Alternatively Summ. J. on Counts . . . of Pl.'s [original] Compl. [hereinafter "Takacs Aff."] ¶ 3.)  She does not offer any facts to suggest that fifteen or more of these twenty-nine individuals worked the amount of time required to qualify them as employees for the purposes of Title VII's numerosity requirement.

In support of its current motion to dismiss the first amended complaint, the Winery offers multiple forms of documentation to demonstrate its position that it never had fifteen employees, including an affidavit from Mr. Fiore, wage and tax records, EEOC employee information summaries, and an EEOC decision that the Winery was not a covered employer under Title VII.[8] (Defs. Michele Fiore, Rosina Fiore and Fiore Winery, Inc.'s Mem. Supp. Mot. Dismiss or Alternatively Mot. Summ. J. [hereinafter "Fiore Mot."], Exs. 3-4.)  In his affidavit, Mr. Fiore

---

[7] By contrast, the court notes that employers not subject to suit under Maryland statutory anti-discrimination law due to their failure to meet the fifteen-employee threshold may still be sued for wrongful termination based on gender discrimination under the common law of the state.  *See Molesworth v. Brandon*, 672 A.2d 608, 616, 341 Md. 621, 637 (Ct. App. 1996) (recognizing such an action); *see also Beye v. Bureau Nat'l Affairs*, 477 A.2d 1197, 1203, 59 Md. App. 642, 653 (Ct. Spec. App. 1984) (recognizing the "concept of constructive discharge" in Maryland).

[8] The Winery also tenders proof that certain individuals alleged by Ms. Takacs to be illegal aliens are not.  In any event, the immigration status of alleged employees does not necessarily bear on the numerosity argument.

swears that seventeen of the individuals identified in Ms. Takacs's affidavit (Takacs Aff. ¶ 3) were short-term volunteers at wine festivals: Margaret Borys, Sheila Beall, Tim Healy, David Davis, Gus Takacs, and the twelve unidentified individuals (Aff. Michele Fiore, Nov. 1, 2006, Fiore Mot., Ex. 3 [hereinafter "Fiore Aff."] ¶¶ 7-8). Ms. Takacs does not refute this characterization in her opposition to the current motion to dismiss. She simply incorporates her previous affidavit and argues that "a dispute of facts exists in that Plaintiff swore in her Affidavit attached to her first response that these persons were paid in cash or otherwise. She also alleges more than 15 employees from personal knowledge." (Mem. Supp. Pl.'s Resp. Def. Fiore's Mot. Dismiss Pl.'s 1st Am. Compl. or Alternatively Summ. J. [hereinafter "Pl.'s Opp'n Fiore Mot."] ¶ 3.) This statement fails to address the key issue in deciding this motion, as raised in Mr. Fiore's affidavit, namely, the amount of time "these persons" worked. Whether they were paid "in cash or otherwise" is not controlling; indeed, Mr. Fiore acknowledges that some of them were given a nominal amount (Fiore Aff. ¶ 5). That Ms. Takacs makes her affidavit based on "personal knowledge" bears only on the basis for her information, not the information's sufficiency in determining a threshold element of her claim. Ms. Takacs's position on whether the seventeen alleged volunteers were employees within the meaning of Title VII's numerosity requirement is therefore ambiguous.

Ms. Takacs also identifies twelve other people as Winery employees in her affidavit, and Mr. Fiore concedes that all but the "Son of Anna and Yonni" have been employed by the Winery at some point. (Takacs Aff. ¶ 3; Fiore Aff. ¶ 8.) Comparing the list of the eleven undisputed employees against the Winery's tax, wage, and EEOC documentation reveals that they are all accounted for, thus none of them seems to fall into the category Ms. Takacs describes of being

paid in cash and not in company records. Eight of them are listed on the Winery's 2004 tax record, while three of them (Anthony Fiore, Mark Orsini, and Megan (last name not given) (Takacs Aff. ¶ 3)) do not appear in this record (Fiore Mot., Ex. 3A). This tax record lists thirteen employees for 2004 (*id.*), thus if even two of these three additional individuals were found to have also been employees within the meaning of Title VII's numerosity requirement during 2004, the Winery may have been a covered employer at that time. It seems unlikely that they were, however, as all three are all listed on subsequent EEOC filings with start dates in 2005. (Fiore Mot., Ex. 3B.) Even proving that the "Son of Anna and Yonni" was an employee at some point seems unlikely to make the Winery a covered employer if the numbers of employees reflected on its tax and EEOC records are otherwise accurate and reflect all of the Winery's employees at a given time (a maximum of thirteen employees in 2004 and nine in 2005).[9] From the materials now before the court, it does not appear as if the Winery had fifteen or more employees during any one year.

As Ms. Takacs has not responded to Mr. Fiore's affidavit or the Winery's other documents by offering any additional information beyond her initial affidavit, it is not clear to the court whether she believes, and is prepared to state under oath the basis for that belief, that the employees identified in her affidavit were long-term employees such that they might qualify as employees within the meaning of Title VII's numerosity requirement. The court is not

---

[9] It is not certain that they do, as the 2004 tax record purports to cover the entire calendar year and lists 13 employees, while the EEOC "headcount detail", effective December 16, 2004, lists just 7 employees (although possibly 6 employees did not work for the full year). (Fiore Mot., Ex. 3A.) The second headcount detail, effective May 22, 2005, lists 9 employees; no tax record for 2005 is included, although a quarterly wage report with a December 31, 2005 end date also lists 9 employees. (Fiore Mot., Ex. 3B.)

requiring Ms. Takacs to have full knowledge about the Winery's employment rolls, as she has no access to the Winery's internal documents, but is asking whether she is prepared to submit a supplemental affidavit in response to the defendants' opposition, and whether she could identify specific items of discovery which would allow her to support that supplemental affidavit. Ruling on the Winery's summary judgment request will be reserved until Ms. Takacs has provided clarification of her position.

If the Winery does not meet Title VII's numerosity requirement, the only counts remaining in Ms. Takacs's suit would be state law claims. In that event, the court would like to know the parties' positions on remaining in federal court, as the court has the authority either to keep the action or remand it to state court. *See Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (stating that "federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away") (internal citations omitted; italics in original).

### Title VII Claim Against Getintegrated

Getintegrated moves for dismissal of or summary judgment on the Title VII claim, arguing that it is not Ms. Takacs's employer for Title VII purposes. (Getintegrated Mot. at 6.) As materials outside of the pleadings are being considered, this will be treated as a motion for summary judgment. Fed R. Civ. P. 12(b)(6). In order to further Title VII's "broad, remedial purpose," an employer should be defined in functional terms to include those "'who are not employers in conventional terms, but who nevertheless control some aspect of an individual's compensation, terms, conditions, or privileges of employment.'" *Magnuson v. Peak Technical Servs.*, 808 F. Supp. 500, 507-08 (E.D. Va. 1992) (internal citations omitted), *aff'd on other grounds,* 40 F.3d 1244 (4th Cir. 1994) (unpublished).

11

Getintegrated, a self-defined PEO which "contracts with companies to provide various human resources functions, including among other things payroll administration and benefits management" (Getintegrated Mot. at 2), has a distinct corporate existence from the Winery. There are two theories under which it could be found liable along with the Winery as Ms. Takacs's employer for any Title VII violations: the "joint employer" theory or the "integrated employer" theory. *See Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 934-35 (D.S.C. 1997) (explaining "joint employer" liability under Title VII); *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999) (outlining "integrated employer" liability under the Family and Medical Leave Act, and citing to *Armbruster v. Quinn*, 711 F.2d 1332, 1337-38 (6th Cir. 1983) (overruled in part on other grounds), applying it in Title VII context) (other internal citations omitted).

The status of PEOs under either theory is unclear, as the widespread use of PEOs is a relatively recent phenomenon which has not yet resulted in a significant amount of case law regarding their treatment under Title VII. *See* Orly Lobel, *The Slipperiness of Stability: Contracting for Flexible and Triangular Employment Relationships in the New Economy*, 10 Tex. Wesleyan L. Rev. 109, 112-14, 132 (2003). The "integrated employer" theory, however, which requires weighing four factors to determine whether "several companies may be considered so interrelated that they constitute a single employer," *Hukill*, 192 F.3d at 442 (internal citations omitted), seems highly unlikely to support a finding that Getintegrated is Ms. Takacs's "employer" in this case. Integration is usually found between a parent and a subsidiary, and even then "only in extraordinary circumstances". *See Johnson v. Flowers Indus.*, 814 F.2d 978, 981 (4th Cir. 1987).

The "joint employer" theory, which turns on the issue of control over the plaintiff, *see Magnuson*, 808 F. Supp. at 507, seems more appropriate in the context of a PEO.  Under this approach, multiple entities may be found to have "jointly exercised the requisite amount of control for Title VII liability to hold," rather than being found to be effectively the same enterprise, as under the "integrated employer" theory.  *Grimes*, 988 F. Supp. at 935, n.2.  Cases involving a temporary employment agency's liability under Title VII have applied this test, and a PEO is more analogous to this type of agency, which places workers at organizations for short term intervals, than to a parent corporation.  *See Williams v. Caruso*, 966 F. Supp. 287, 295-96 (D. Del. 1997) (finding worker placed in company through temporary employment agency was not an employee of agency for Title VII purposes when agency had no daily control over plaintiff's work and only supplied her paycheck); *but cf. Grimes*, 988 F. Supp. at 936 (denying summary judgment for temporary employment agency on issue of Title VII employer liability where agency paid plaintiff's wages, benefits, and taxes; had responsibility for any of her complaints about her employment status; and could assign and fire plaintiff).

The court does not need to determine whether Getintegrated may be liable as a "joint employer" with the Winery, however, because even if Getintegrated were so found, the plaintiff fails to satisfy the imputability prong of the four-part test for a hostile workplace environment created by sexual harassment.  To establish such a claim, the "plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer."  *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (internal references omitted).  Even if the arrangement between Getintegrated

13

and the Winery were found to convey "joint employer" status upon Getintegrated, there is no indication that Mr. Fiore would be a supervisor within Getintegrated's hierarchy, although he clearly is within the Winery's. The test for imputability is thus a negligence standard, with liability attaching only if the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 333-34 (internal citations omitted). Ms. Takacs does not dispute Getintegrated's assertion that she did not inform anyone there about the alleged misconduct, rather, she admitted that she did not. (Getintegrated Mot. at 9; Getintegrated Mot., Ex. 3 & Pl.'s Mem. Supp. Def. Getintegrated's Mot. Dismiss Pl.'s [original] Compl. or Alternatively Summ. J. [hereinafter "Pl.'s Opp'n Getintegrated Mot."], Ex. 4, *In re: Alicia Takacs* (July 29, 2005) [hereinafter "Hearing Tr."] at 24.)

The question thus becomes whether Getintegrated should have known about the alleged harassment. An employer can be "charged with constructive knowledge of coworker harassment when it fails to provide reasonable procedures for victims to register complaints." *Ocheltree*, 335 F. 3d at 334 (internal references omitted). Getintegrated acknowledges that it had some responsibilities for preventing and responding to incidents of sexual harassment at the Winery. At the unemployment hearing, Neal Wesloski, a Getintegrated representative, explained as follows:

> we [Getintegrated] work to put together policies and procedures, employee handbooks, administer benefits for Fiore Winery, handle any worker's compensation cases that come up and we also consult with them especially in harassment type of case we would come out and we would do an investigation into any type of allegations and certainly investigate any witnesses or anybody involved in any type of allegation when we are certainly notified by the supervisor or the person who is putting forth the allegation.

(Hearing Tr. at 33-34.) Mr. Wesloski further testified that the job application for the Winery that Ms. Takacs filled out and signed provided that she could contact Getintegrated with any

"employment related problems or issues". (*Id.* at 34-35.) He also stated that the sexual harassment policy, which Ms. Takacs signed and stated that she understood, would have been explicitly identified as belonging both to the Winery and Getintegrated. (*See id.* at 32, 34) (explaining that the job application "indicates we [Getintegrated] have a co-employment relationship and stipulates as far as the policies and procedures are concerned they are both [Getintegrated] and Fiore's policies").

Ms. Takacs does not offer any facts in her pleading or affidavit showing that Getintegrated's procedures for handling sexual harassment complaints were not reasonable. She acknowledges the procedures existence by relying on Mr. Wesloski's testimony about them in her arguments in support of Getintegrated's employer status. (*See* Pl.'s Opp'n Getintegrated Mot. at 2-3.) She does suggest that she was confused about the appropriate contact person at Getintegrated due to its changing corporate identity and the lack of clarity about its relationship with workers at the Winery (*id.* at 2, citing Ex. 5, *Takacs v. HRPro*, *Inc.*, No. 0513639, *2 (Md. Unemployment Ins. Appeals Div. 2005) [hereinafter "Unemployment Report"])[10] but offers no evidence that she even made any attempt to contact Getintegrated and does not dispute that her

---

[10] The hearing examiner's conclusion that "[t]he relationship between HRPRO [Getintegrated], Fiore Wineries [sic], and the claimant was so vague and confusing that a reasonable employee would not have known of her right to complain to the employer [Getintegrated] about Michael Fiore's conduct" was made in the context of a different analysis from that undertaken by this court. (Unemployment Report at *2.) The examiner was concerned with whether the circumstances surrounding Ms. Takacs's resignation permitted her to collect unemployment benefits, while this court looks to see if there are genuine issues of material fact regarding the objective reasonableness of Getintegrated's policies. Ms. Takacs's failure to contact Getintegrated did not preclude a determination by the hearing examiner that she resigned for good cause; this does not mean, however, that the procedures Getintegrated had in place for dealing with sexual harassment were unreasonable so as to make it liable for conduct of which it had no notice.

employment application and the harassment policy she signed advised her to do so.  Absent any facts suggesting that the procedures for registering complaints were not reasonable, there are no genuine issues of material fact, and summary judgment for Getintegrated will be granted.

A separate order follows.

| | |
|---|---|
| __February 8, 2007__ | _____/s/_____ |
| Date | Catherine C. Blake |
| | United States District Judge |